EMILY J. FARDY and FRANKLIN KONE *vs.* JOHN B. WILLIAMS.

*Specific Performance.*

When a contract, which it is sought to have specifically executed, is definite in its terms and provisions, and established by unequivocal testimony, and the party complaining of its non-performance, has no adequate remedy at law, by way of compensation in damages, a Court of Equity will not hesitate to afford relief;—if otherwise, it will refuse to interfere, and leave the party to his legal remedy.

A bill was filed for the specific performance of an alleged agreement by the defendant, to lease to the complainant certain wharf property, of which she was the owner. The agreement purported to have been entered into by the complainant and defendant through their respective agents, and the same was signed by them as agents. The defendant denied that she ever made the agreement; and the party who signed it as her agent, stated that he was not authorized by her to do so; that through his own mistake and inadvertence, he signed it as her agent, having been her agent in the transaction of other matters; that at the date of said agreement, he was himself the lessee of the property. A non-compliance with the terms and conditions of the agreement on the part of the complainant was also alleged. The proof being deemed insufficient to show that the defendant ever authorized the execution of the agreement, or that she subsequently ratified it, and the testimony so far from being clear and definite, being involved in obscurity and conflict, it was HELD:

That the complainant was not entitled to have the agreement specifically executed.

APPEAL from the Circuit Court of Baltimore City,

The bill of complaint in this case was originally filed by the appellee against Emily J. Fardy, for the specific performance of a contract in writing, alleged to have been made between them on the 4th of October, 1871. The bill charged that by this contract, the said Emily contracted to lease to the appellee, her property in

the city of Baltimore, known as "Fardy's Wharf," for a term of six years from the first of January, 1872, at an annual rent of $2225, and the payment of the taxes and ground-rent on the property; that the appellee, on his part, agreed to pay the said rent semi-annually, in July and December of each year, except for the first year, when the rent was to be paid in advance, as follows: $1000 on the first of January, 1872, and $1225 on the first of March, 1872; and it was agreed, that at the expiration of the period of six years aforesaid, the appellee should be entitled to a further lease for a term of five or ten years, at his option, at an annual rent of $2725, and payment of the ground-rent and taxes, as in the first case, on the payment to the said Emily of a bonus of $3000, and that in case such additional lease should be withheld, then the said bonus should not be payable by the appellee, but the said Emily should pay to him the sum of two thousand dollars as an equivalent for a warehouse, which he proposed to construct on the said property, and in case the appellee should refuse to renew the lease, then he should pay the said Emily the sum of $1500, and deliver to her the possession of the said warehouse, to be erected by him at a cost of not less than $5000; that the said Emily contracted that she would guarantee the appellee against demands for ground-rent to any greater amount than $275, and taxes to any greater amount than $500, and that there should be sufficient depth of water upon the east side of the pier to accommodate a vessel drawing sixteen feet, so that a vessel drawing sixteen feet or under might be enabled, with convenience, to lie alongside the said east side of the pier; and it was further agreed, that the said Emily should put the wharf in good order and repair, and should deepen the berth along the west side of the pier, so as to accommodate vessels drawing sixteen feet of water, in case the appellee required it, and on the under-

standing that in case the taxes should be less than $500 per annum, the appellee should apply the difference between the taxes and $500 towards the deepening of said berth, and that the appellee should allow the brick store, on the south-west corner of the property known as "Fardy & Woodhull's Ship-Chandler's Store," to remain, and that there should be an alley-way of two feet in width left between the northern wall of said store and that part of the southern wall of the warehouse opposite to it; that all buildings then on the premises, except the said store and ice-house, should be removed by said Emily by the first of January, 1872, and the ice-house by the 26th of March, 1872; that the said Emily would, on or before the first of November, 1871, execute or cause to be executed, a lease, in accordance with the terms of said contract.

The bill further charged, that the lease was not tendered for execution on the said first of November, because negotiations had failed, that the appellee had made arrangements to enter upon possession of the said property and make the necessary arrangements for his business, and for the construction of a warehouse on the property, but that the said Emily had refused to comply with the terms of said agreement, and had notified the appellee, through her agent, that she would repudiate the same—would execute no lease, and would not allow him to enter on the possession of the property—and the appellee had good reason to believe, and therefore charged that the said Emily was about to lease the property to some other person, and to put him in possession thereof; that the appellee was entitled to have a decree for a specific performance of said contract, and he was remediless at law.

The bill prayed for a specific performance of the contract, and that meanwhile the said Emily should be enjoined from selling, leasing or disposing of the said property until the further order of the Court.

With the bill was filed the written agreement, which purported to have been entered into by Emily J. Fardy, by her agent, Franklin Kone, and John B. Williams, by his agent, James Thruston. It was signed by Franklin Kone, agent, and James Thruston, agent. The injunction issued as prayed.

Emily J. Fardy filed an answer to the bill, alleging that she never made the agreement, and that she was not a party thereto, directly or indirectly; that, on the contrary, long previous to the filing of the bill, and prior to the date named in the said agreement, she had in good faith, rented and leased the property in question, known as "Fardy's Wharf," to Franklin Kone; and that at the time of the issuing and service of the injunction, she had no legal control over the property, so far as to rent or lease it. The answer further stated, that the complainant had not complied with the terms and conditions of the agreement, and that he had a remedy at law in the matter of said agreement, and as against the proper party, and prayed that the injunction might be dissolved and the bill dismissed.

After the filing of this answer, the appellee filed a supplemental bill, in which he stated that he tendered to the respondent on the 1st of January, 1872, the sum of $1000, which by the agreement, he was required to pay on that day, as part of the first year's rent of the premises, and at the same time tendered to her for execution, the draft of a lease in exact conformity to the provisions of the contract, but that she (Franklin Kone being with her at the time,) refused to execute the same, or to receive the money. The supplemental bill made Kone a party, upon the ground that he claimed an outstanding leasehold title in the property, and the same was asserted by the respondent in her answer; the bill prayed that an injunction might issue against both.

Kone filed an answer, in which he admitted that he signed the agreement, but stated that he was not author-

ized by Mrs. Fardy to do so as her agent; that at that time he was the lawful possessor of the property in question, under a prior agreement between Mrs. Fardy and himself; that he inadvertently signed the agreement as her agent, having been her agent in the transaction of other matters; that the appellee had failed to comply with the terms of the agreement, and that by reason of such neglect and non-compliance and the damage thereby caused him, Kone, he had, prior to the institution of this suit, sub-let and transferred all his right to a portion of the property to other parties, who had no knowledge of the agreement with the appellee, and that it was not then in his, Kone's power, to specifically perform said agreement.

This answer was excepted to, because the respondent failed to disclose to whom he had sub-let part of the property. The exceptions were sustained, and Kone filed an amended answer, in which he stated that he signed his name to the agreement as agent at the request of Thruston, and through his own mistake and inadvertence; that he leased the property known as "Fardy's Wharf," from Mrs. Fardy on the 1st of April, 1868; that he entered into the agreement with the appellee in good faith, on the 4th of October, 1871, and that he tendered himself ready on the 1st of November, 1871, the time named in the agreement, to execute the lease, but Thruston declined to execute it, and stated at the time that the appellee said that he could not sign any paper whatever until he knew what the building would cost; that the architects had fooled him in the price, and that he did not know when he could be ready; the answer further stated that previous to the service of the injunction upon him, he, Kone, about the latter part of December, 1871, or the first part of January, 1872, leased to Jacob Frederick & Son, ice dealers, about forty feet front of the said wharf in question, with the ice-house thereon, for three years, with the

32        v. 38.

privilege of three years more; that during the year 1871, he obtained from Mrs. Fardy, the privilege to have and retain said property for six years from the 1st of April, 1872.

By agreement, the answer of Mrs. Fardy to the original bill was accepted as her answer to the supplemental bill. A commission was issued, and much testimony taken, which, from the conclusion reached by this Court, it is deemed unnecessary to state.

The Circuit Court, (PINKNEY, J.,) held that a specific performance of the agreement for a lease, should be enforced and so decreed; and the injunction previously issued, was made perpetual.

From this decree, the respondents appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT and MILLER, J.

*N. W. Watkins* and *Wm. S. Waters,* for the appellants.

The testimony is not sufficient to prove authority by Mrs. Fardy to sign the agreement. It is immaterial whether any effective lease was ever given by Mrs. Fardy to Kone or not. Certainly there is no evidence of authority to execute a contract like this. Unless the authority is clearly proved, specific performance should not be granted. The execution of such an agreement, is not an ordinary transaction of business—a general authority to manage the business of a party does not prove it.

The agreement itself, under the Statute of Frauds, if not in writing, would be void. It would be a gross violation of the spirit of the Statute, if the authority to sign it could be proved by anything short of clear evidence.

Here there is no such proof. The agent says he never was authorized to do this act, and Mrs. Fardy

denies it. No other person pretends to actual knowledge of it. 2 *Story Eq.*, sec. 769; *Nelson vs. Hagerstown Bank*, 27 *Md.*, 70; *Philpott vs. Elliott*, 4 *Md. Ch. Dec.*, 273; *Waters vs. Howard*, 1 *Md. Ch. Dec*, 112; 2 *Greenl. Ev.*, secs. 59, 60, 63, 64, 64a; 1 *Greenl. Ev.*, secs. 113, 416, 417; *Howard vs. Carpenter*, 11 *Md.*, 259.

An agency to manage the general business of a party, does not extend by implication to authorize such a contract as this. *Story on Agency*, secs. 69, 71, 88; *Hawkins vs. Bruce*, 7 *M. & W.*, 595.

There is no evidence of ratification of the authority. When the $1000 was tendered to Mrs. Fardy, nothing that she said could be construed into an acknowledgment of an authority previously given or the ratification of it. She simply said that she knew nothing about the business, and must see Kone. The contract had then been repudiated by Kone. *Howard vs. Carpenter*, 11 *Md.*, 279.

The contract sought to be enforced is, that the appellant, Mrs. Fardy, will execute or have executed a legal instrument of lease in conformity with the terms of the agreement, before the first of November, 1871. There is no corresponding agreement on the part of Williams, and had a lease been executed and tendered within the terms of the contract, and Williams had refused to execute it, he could not have been compelled by a Court of Equity to·execute it; there is, therefore, no mutuality in the agreement. *Geiger vs. Green*, 4 *Gill*, 472; *Duvall vs. Myers*, 2 *Md. Ch. Dec.*, 401; *Rider & Trotter vs. Gray, et al.*, 10 *Md.*, 291.

The agreement is for an interest in land for more than seven years, and cannot therefore be enforced. *Anderson vs. Critcher*, 11 *Gill & John.*, 453; *Howard vs. Carpenter*, 11 *Md.*, 274. The remedy of the complainant is at law.

The appellee refused to accept the lease within the terms mentioned in the agreement. Whether, therefore,

he had sufficient reason for and was justified in so doing, depends upon the testimony. This is conflicting. The testimony of Kone is clear to the point, that the contract was abandoned. If any difficulty or confusion has arisen on this point, it is due to the want of promptness on the part of the appellee, and clear evidence should be required in his justification. The defendants cannot now execute the contract, and the Court will not therefore enforce it.

*William A. Fisher*, for the appellee.

Nothing is more clearly settled in equity, than that time is not to be regarded as of the essence of the contract in suits for specific performance, unless it be clearly made so by the terms of the contract, and the resisting party will suffer injury unless it be so treated. *Fry on Specific Perf.*, secs. 709, 712, 745, (10 *Law Lib.*); *Smoot vs. Rea & Andrews*, 19 *Md.*, 406–7.

Specific performance will be granted, although there has not been strict compliance by the complainant, if the non-compliance does not go to the essence of the contract. *Smoot vs. Rea & Andrews*, 19 *Md.*, 406.

It is apparent that the failure of Williams to demand the execution of the lease on the first of November, 1871, did not go to the essence of the contract, as he was not to have possession, and the *term was not to begin until January*, 1872, and compliance had been refused by the defendants, and the bill filed before January 1, 1872. If the defendants rely upon any abandonment of the written contract, *they must prove it. Fry on Specific Perf.*, sec. 698.

Not only have they failed to prove it, but the testimony abundantly establishes that there never was any intention to abandon the written contract; that Mr. Williams wished to put up a more expensive house, if he could, and obtained an extension of time in order to enable him to mature his plans, and to negotiate for a change in

the terms of the contract looking to the increased cost of the building.

During the negotiations, after November 1, 1871, Kone showed that he was relying on the written contract by a threat to enforce its terms at once.

Another objection made by the defendants is, that it does not sufficiently appear that Kone had authority to act as the agent of Mrs. Fardy in making the contract. This defence was wholly an after-thought. Mrs. Fardy did not pretend to question his authority when Mr. Thruston made her the tender on January 1st, 1872, and it was not even alluded to, until after Kone had an opportunity to make the suggestion to her.

As to the pretended lease from Mrs. Fardy to Kone, it is unimportant, as he is estopped from setting it up, having executed the contract as agent of Mrs. Fardy. But it was incumbent upon him to prove it.

STEWART, J., delivered the opinion of the Court.

The bill in this case was filed for the specific performance of a contract, alleged to have been made by Emily J. Fardy, through her agent, Franklin Kone, with John B. Williams, through his agent, James Thruston, for a lease of certain property in the city of Baltimore, known as "Fardy's Wharf," for the term of six years, with a further agreement that at its termination Williams was to have the option of an additional term.

There seems to have been no question that the property belonged to Mrs. Fardy, and by her answer she denies she ever made or authorized such an agreement.

There is no proof that she ever signed the alleged contract. It is averred that a certain Franklin Kone executed the agreement as her agent, and he states that he had no authority from her to sign the agreement as agent for her.

It is well settled by all the authorities, that the interference of a Court of Equity to decree specific perform-

ance of contracts depends upon the exercise of a sound discretion and fair consideration of all the circumstances, of the alleged contract, and the conclusiveness of the testimony to establish it, as well as the nature of the property involved. *Mundorff vs. Kilbourn*, 4 *Md.*, 459.

It is not a matter *ex debito justitiæ*, and it is an indispensable preliminary that the contract must be made out by the clearest and most satisfactory proofs. *Geiger vs. Green*, 4 *Md.*, 476.

When the contract is definite in its terms and provisions, and established by unequivocal testimony, and the party complaining of its non-performance has no adequate remedy at law, by way of compensation in damages, a Court of Equity would not hesitate to afford relief; otherwise it will refuse to interfere, and leave the party to his legal remedies. *Sullivan vs. Tuck*, 1 *Md. Ch. Dec.*, 59.

Without considering the collateral or incidental questions discussed by the respective counsel, from a careful examination of the testimony, we do not think any contract to bind Mrs. Fardy is sufficiently made out to justify a Court of Equity in compelling its specific performance, according to the well-established principles of equity applicable to such questions.

It appears from the testimony that Franklin Kone was the brother of Mrs. Fardy, to whom she confided much of her affairs, and he transacted her business. Notwithstanding this, in the absence of special authority or definite and clear proof of his general agency for such purpose, no sufficient inference can be deduced from his relations and dealings with Mrs. Fardy that he had any competent authority from her to execute a contract for the lease of the property in question.

It would be giving great latitude to a general agent, and would require the most satisfactory and conclusive proof of his authority to hold the principal bound by his act, in the execution of such an agreement as this.

It would be highly dangerous doctrine to hold the proprietor of real estate or leasehold property, usually incapable of personally attending to her affairs, estopped by any acts of an ordinary agent she was in the habit of employing, unless she was fully apprised of their nature and extent. Nor is the proof more satisfactory as to any ratification or recognition of the acts of Franklin Kone, as her agent in the execution of the agreement in question.

It is well settled that, before she can be held to have ratified his acts, it·is necessary to prove that she had full knowledge of all the facts affecting her rights. *Howard vs. Carpenter,* 11 *Md.,* 279.

Finding no sufficient proof that Mrs. Fardy authorized Franklin Kone to execute the contract, or that she subsequently ratified what he had done, and the testimony, so far from being clear and definite, is involved in obscurity and conflict, we think the Court below erred in decreeing the relief granted.

*Decree reversed, and*
*bill dismissed.*

(Decided 2nd July, 1873.)